CLEGG *et al. v.* FEDERAL RESERVE BANK OF ST. LOUIS.

(Division A.   March 26, 1934.)

[153 So. 812.   No. 31022.]

John W. Crisler and J. H. O'Neal, both of Clarksdale, for appellants.

Shands, Elmore & Causey, of Cleveland, for appellee.

**McGowen, J.,** delivered the opinion of the court.

In July, 1931, the appellee, Federal Reserve Bank, exhibited its bill against Mrs. Elsie Clegg, formerly Scheider, and her daughter, Henrietta Scheider, seeking a judgment for, and the collection of, a note and interest amounting to seven thousand three hundred eighty-eight dollars and sixty-seven cents, executed by Mrs. Clegg in favor of the Planters National Bank of Clarksdale, Mississippi, and held by the Federal Land Bank as a holder in due course. The bill charged fraud, unnecessary to detail, and sought a lien upon certain corporation stock held by the bank as collateral, and sought further to enforce a judgment lien by virtue of an attachment which had been sued out and levied on the one-seventh interest of Mrs. Scheider in two hundred seventy-nine acres of land in Coahoma county, Mississippi, in the country, upon which Mrs. Scheider resided as a homestead. There were other defendants whose rights are not involved in this appeal.

The answer of Mrs. Clegg and Henrietta Scheider denied the material allegations of the bill. The proof disclosed that Mrs. Scheider and her six children acquired title to the land by virtue of the will of her deceased husband, Julius Scheider. By item 3 of the will the two hundred seventy-nine acres of land here in controversy were devised to Mrs. Scheider and the six children absolutely in fee, subject to the provisions of item 4, which is as follows: "It is my will that my estate, real, personal and mixed, shall be under the full control of the executrix herein named, or any successor, to her, who may qualify; she to have authority to farm, or to rent from year to year, or to let for a term of years, any part or parcel or all of the real property of which I may die seized, situate in the State of Mississippi. . . . For the purpose of avoiding the expense incident to guardianship proceedings, it is my will that my estate be managed by my

executrix, in accordance with the provisions of this will until the youngest of my six children shall have attained its majority, until which time, the title to the real property hereby devised unto my wife and six children, shall stand in trust in the executrix or any successor to her, and no part or parcel thereof shall be sold or incumbered, during the continuation of the trust aforesaid, save and except in the instance hereinafter provided.''

The material part of item 6 is as follows: ''As each child shall attain its majority, it shall be entitled thereafter to receive its proportionate part of the net income derived from the above sources, but shall in no event be entitled to a distribution of the estate or a partition of the real property until the termination of the trust hereby created.''

In 1931 Henrietta Scheider had not attained her majority of twenty-one years, but the chancery court had removed her disability of minority. The other children were more than twenty-one years of age. Early in the year 1931 all the children, including Henrietta, conveyed to Mrs. Clegg their interest in the land here involved. She procured a loan from the Prudential Insurance Company by mortgage on the land, and thereupon reconveyed her one-seventh interest to Henrietta Scheider, at which time the debt claimed by appellee was in existence, having reconveyed to each of her children that which each of them conveyed to her.

In its final decree the chancery court adjudged the personal liability of Mrs. Clegg for the full amount of the note and interest; adjudged a lien on the corporation stock in favor of the bank as security for the indebtedness; adjudged that the conveyance by Mrs. Clegg to Henrietta Scheider was voluntary and a fraud upon creditors; and further adjudged that the one-seventh interest of Mrs. Clegg in the land should be subjected to the payment of the debt of appellee, but that she should be entitled to an exemption therein limited to the dwell-

ing house and its curtilage of a value of not more than three thousand dollars.

Appellants' first contention made in this court was that the homestead exemption should not have been limited to the house and curtilage, but should have comprised an undivided one-seventh interest in one hundred sixty acres of land, including the dwelling, not to exceed three thousand dollars in value. Appellee thereupon conceded that the exemption should not have been limited to the dwelling and its curtilage but should have been extended to the one hundred sixty acres of land, to be set apart by the court. In a supplemental brief appellants now insist that due to a change in the exemption statutes Mrs. Clegg was entitled to claim an exemption as to her interest in the entire two hundred seventy-nine acres of land.

We are of opinion that notwithstanding the confusion caused by the amendment of the exemption law as to land, brought about by chapter 159, Laws of 1926, the homestead exemption exists only in one hundred sixty acres of land where the homestead is in the country. By section 1821, Hemingway's 1917 Code, citizens of this state who were householders and had families were entitled to hold exempt from seizure or sale, etc., the land and buildings owned and occupied as a residence, but the quantity was not to exceed one hundred sixty acres, nor the value thereof, inclusive of improvements, the sum of three thousand dollars. This section related to exemptions in the country. Section 1822 provided for exemptions in cities, towns, and villages and declared that the householder was entitled to hold, exempt from seizure, etc., the land and buildings owned and occupied as a residence by such person, not to exceed in value, save as hereinafter provided, three thousand dollars. This section contained these words "residing in any city, town or village." Chapter 159, Laws of 1926, with certain other changes not material here, omitted from this sec-

tion the words "residing in any city, town or village," thereby on its face declaring that the exemption was limited in value to three thousand dollars, but unlimited in quantity of land. It raises a very serious question as to whether or not section 1822, as amended by the Laws of 1926, did not repeal entirely the preceding section 1821, thereby extinguishing any difference between the amount of holding in acreage to be allowed an exemptionist in the country or in a city, town, or village.

Subsequently, however, the Code of 1930 re-enacted section 1821, Hemingway's 1917 Code, as section 1765, and re-enacted chapter 159, Laws of 1926, as section 1766; and the subsequent sections 1767, 1768, 1769, 1770, and 1771, Code of 1930, dealing with the declaration of a householder who desires to claim an exemption, fix the quantity of land to be allotted as exempt as not to exceed one hundred sixty acres. When these sections are read together in pari materia, it would appear that the omission of the words "in any city, town or village" from section 1765 was a clerical error, or inadvertence on the part of the Legislature. Whether this be true or not, when section 1765 is read in connection with the section preceding and those immediately following, it is clear that it was dealing with an exemption of land to a householder in a "city, town or village," and that the only fair construction of all these sections is to that effect. We are therefore of opinion that a householder desiring to claim an exemption of land in the country is limited to one hundred sixty acres not to exceed three thousand dollars in value, and as otherwise set forth in said sections. Section 1771, Code of 1930, clearly limits the quantity to one hundred sixty acres in case an allotment of a homestead becomes necessary in court proceedings. It could not be that one who claims the exemption by declaration would be limited to one hundred sixty acres and yet if his land were sought to be subjected to the pay-

ment of his debts by court proceeding the acreage would be unlimited.

Appellants next contend that the language of the will prohibits the courts from ordering a sale of any of these lands until the termination of the trust, when Henrietta Scheider becomes of age. We have set out the language of the will for the purpose of demonstrating that the trust set up in no wise interfered with the title to the estate therein conferred. The prohibition is that the devisees themselves cannot have partition thereof until the youngest child is twenty-one years of age. The will nowhere undertakes to provide that the interest of Mrs. Clegg shall not become subject to her debts. There is no spendthrift trust here, nor is the language such as that by implication a trust of that character could be set up so as to protect the devisees' interest from being subjected to the payment of their debts in a proper procedure. The will does not contain any provision indicating that the interest of the several devisees shall not become liable for such. This exact question has been settled by this court in the case of Montroy v. Phillips, 134 Miss. 345, 98 So. 775.

The action of the court below will be affirmed in all respects, except as to the allotment of the homestead, which allotment should not be limited to the dwelling house and curtilage but should extend to one hundred sixty acres and should be set apart. Mrs. Clegg's conveyance to her daughter Henrietta is valid in so far as the one hundred sixty acres found and allotted to be exempt is concerned. As to the balance of the lands conveyed to Henrietta by Mrs. Clegg, the title is void and the land is subject to sale for debt. It will be necessary to remand the case in order that the court may set aside the one hundred sixty acres exempt to the householder herein in accordance with the statute as herein construed.

Affirmed in part, reversed in part, and remanded.